IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LEAH GARRETT, | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| | § | |
| HAPPY STATE BANK, | § | |
|     Defendant | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**COMES NOW**, Leah Garrett (hereinafter "Plaintiff"), and complains of Happy State Bank (hereinafter "Defendant"), and for cause of action would respectfully show unto the Court the following:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§1331 and 1343. In addition, Plaintiff invokes this Court's jurisdiction pursuant to the Family and Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. § 2601 *et. seq*.

2. Venue is proper in the Northern District of Texas, Amarillo Division, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## II.
## PARTIES

3. Plaintiff, Leah Garrett, is a female citizen of the United States and a resident of Lubbock County, Texas. At all times relevant hereto, Plaintiff was an employee of Defendant.

Plaintiff has been subjected to unlawful employment practices committed in Amarillo, Texas by employees and agents of Defendant.

4. Defendant is a financial institution doing business in Texas, and an employer within the meaning of the FMLA. Defendant may be noticed of this lawsuit by serving its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## III.
## FACTUAL SUMMARY AND CAUSE OF ACTION

5. This action is authorized and instituted pursuant to the FMLA. This is a proceeding for legal and/or equitable relief available to secure the rights of the Plaintiff under this statute.

6. Plaintiff was employed by Defendant's predecessor, Halle County State Bank/Centennial Bank from approximately April 19, 1993, until it was acquired by Defendant in approximately November 2020. Plaintiff was terminated by Defendant on or about December 23, 2020.

7. Defendant is an "employer" covered by the FMLA within the meaning of 29 U.S.C. § 2611(4). At all times relevant, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

8. On or about August 31, 2020, Plaintiff reported to Defendant about her breast cancer and her intent to contact Human Resources (hereinafter "HR") concerning applying for FMLA. Plaintiff contacted several employees from August 31, 2020 through September 9, 2020, regarding her FMLA request. Plaintiff's multiple inquiries concerning FMLA were frequently ignored by HR and her manager(s).

9. On August 31, 2020, Plaintiff informed Defendant's employee Kristilyn Peterson that she would need September 2, 2022, off to have her port placement surgery. Ms.

Peterson confirmed Plaintiff's request and advised that she would loop in Defendant's employee Cheryl Duke concerning the FMLA request.

10. On September 3, 2022, Plaintiff sent an email inquiring about her FMLA and explaining that she may need to take individual days off. An employee of Defendant responded at the end of the day stating that she would reach out to Plaintiff on the next day.

11. On September 4, 2020, Ms. Duke called Plaintiff and discussed her FMLA request. Defendant told Plaintiff that she did not need to apply for FMLA until her surgery. Defendant stated that since Plaintiff was salary and had over 1,000 hours of sick time accrued and short-term disability, she was covered.

12. Plaintiff asked Defendant if she still needed to apply for FMLA even though she had time accrued and that it was an FMLA-covered event to protect the company rights under FMLA and so that excessive absences did not adversely affect her attendance.

13. On September 9, 2020, Plaintiff received an email from Ms. Peterson asking Plaintiff if she contacted HR. Plaintiff replied explaining her conversation with Ms. Duke on September 4, 2020. Ms. Peterson replied that Defendant "does things differently" and does not fill out FMLA paperwork unless it's absolutely necessary.

14. Just 1 day later, on September 10, 2020, Plaintiff received a call from Defendant's employees Wyatt Leavell and Alberto Rios, along with an email containing a termination letter. The letter stated that Plaintiff would receive a conversion bonus of $31426.08 paid on December 14, 2020, if Plaintiff stayed through November 25, 2020, in recognition of the critical duties she performed.

15. On September 15, 2020, Plaintiff met with Mr. Leavell to discuss the letter that she received. Mr. Leavell told Plaintiff that when he read the letter and realized that it was a

termination, he asked Alberto Rios if he was aware of Plaintiff having breast cancer and that she had recently requested FMLA. Mr. Leavell stated that this information did not sway Mr. Rios' decision to issue the termination letter. Plaintiff also told Mr. Leavell that Ms. Duke had denied her FMLA request the week before her termination. Mr. Leavell asked Plaintiff if she had spoken to HR Director Renee McNeely to confirm everything regarding Plaintiff's FMLA. Mr. Leavell asked Plaintiff to email Renee McNeely.

16. On September 15, 2020, Plaintiff emailed Ms. McNeely to confirm that the information she received from Ms. Duke was correct. On or about September 17, 2020, Plaintiff received a response back from Ms. McNeely stating that there was a misunderstanding, because Ms. Duke thought that Plaintiff was going to continue to work through her chemotherapy.

17. On September 17, 2020, Plaintiff described the details of her intense cancer treatment and advised that she needed a full day off. Ms. McNeely replied that Plaintiff's request made perfect sense.

18. On September 18, 2020, Plaintiff sent a time-off request to Ms. Peterson for a treatment on September 25, 2020. Plaintiff forwarded the request to Ms. Duke, who did not respond until September 22, 2020, stating that she had misunderstood Plaintiff's first request for FMLA when Plaintiff initially found out that she had breast cancer. Ms. Duke stated that other employees with cancer have not taken off full days for chemotherapy. Ms. Duke also stated that Plaintiff would not need to apply for short-term disability, since Plaintiff had so much sick time accrued and that she would send Plaintiff the paperwork needed to be completed by Plaintiff's doctor.

19. On September 23, 2020, Ms. Duke emailed Plaintiff the FMLA paperwork dated for the incorrect date of September 17, 2020, when initially Plaintiff's request for FMLA was on

August 31, 2020. Plaintiff informed Ms. Duke of the incorrect date and Ms. Duke simply replied, "thank you" to Plaintiff as if she was going to correct it.

20. On September 28, 2020, Plaintiff submitted a request to be off for chemotherapy via email to Ms. Duke, who did not respond until October 9, 2020.

21. On October 6, 2020, Plaintiff received an email from Defendant's employee Laura Riley indicating that she was assigned to assist Plaintiff in finding her a new position within the company. Plaintiff forwarded her resume to Ms. Riley and did not receive any other correspondence from Ms. Riley, nor was Plaintiff considered for any other open positions for which she qualified. Ms. Riley also did not send Plaintiff any information on open positions.

22. On October 13, 2020, Plaintiff emailed FMLA paperwork back to Ms. Duke. Plaintiff then emailed Ms. Duke on October 19, 2020, to confirm that she had received the FMLA paperwork. Ms. Duke stated that she would review the paperwork and send an approval shortly.

23. On October 30, 2020, Plaintiff spoke to Ms. Riley in the mailroom and asked her if the position for Upland Branch Operations Manager had posted yet. Ms. Riley replied: "No, they just gave that position to employee Michael Henson." Ms. Riley stated that she does not understand what they do sometimes, since she is supposed to be finding jobs for employees. Plaintiff replied that she was more qualified for the position than Michael Henson.

24. On November 2, 2020, Plaintiff followed up with Ms. Duke regarding FMLA approval. Ms. Duke indicated that Plaintiff's FMLA had been approved.

25. On November 2, 2020, Defendant's employee Mandi Willis scheduled a zoom call between Plaintiff and another employee on her team to advise them that she would be their supervisor after conversion on November 9, 2020, and that Plaintiff was being moved to Director Research.

26. On November 5, 2020, Plaintiff notified Ms. Willis that she had a doctors' appointment on November 9, 2020, after previously notifying Mr. Leavell of her appointments. On November 6, 2020, Ms. Duke, Ms. Willis and Plaintiff were on a conference call, and Plaintiff was asked by Ms. Willis: "what type of appointment was going to be attended, and why is Plaintiff just now notifying her of it." Plaintiff explained what type of appointment it was and also explained that she could not give her a weeks' notice due to her just becoming her supervisor just days before. Ms. Duke then told Plaintiff that going to the appointment would affect her yearly bonus.

27. On November 6, 2020, Plaintiff returned back to work soon after chemotherapy, because her treatment was shortened that day, and Plaintiff did not want to lose her bonus. On the same day, Plaintiff spoke to Ms. Willis regarding her doctor appointments and how Plaintiff was told that her appointments would not affect her bonus, because she was approved for FMLA for doctor visits due to her cancer.

28. On November 9, 2020, Plaintiff rescheduled a doctors' appointment, because she did not want to affect her bonus. Plaintiff was afraid of losing her bonus due to retaliation from Ms. Duke and Ms. Willis for going to her doctors' appointments.

29. On December 2, 2020, Plaintiff received a bonus of $100 after being told that another employee received over $800.

30. On December 7, 2020, Plaintiff sent an email to Ms. Willis to notify her of Plaintiff's upcoming surgery. Ms. Willis responded minutes later with confirmation.

31. On December 23, 2020, Plaintiff was told her services were no longer needed and that she would be paid through January 2, 2021.

32. When Defendant acquired its predecessor, it created the following new positions: Kim Riddle - VP Regional Support Analyst, Michael Henson – Branch Operations Manager,

Angela Miller – VP Wire Transfer Lead, Guillermina Enriquez – VP Loan Servicing Manager, Kathy McDowell – VP Product Strategy, Kerry Kirk – AVP Service Delivery Engineer III Team Lead, and Katy Taylor – AVP Regional Operations. Defendant transferred the following employees: Brenda Clark – AVP Configuration Engineer II Team Lead (from VP to AVP), Laura Riley – AVP Recruiter (from VP to AVP), Charmayne Barnes – AVP Senior Loan Servicing Specialist (from VP to AVP), Vicky McKinney – SVP Compliance Officer, and Jason Fellers – Mortgage Underwriter.

33. Defendant intentionally and willingly interfered with and discriminated and retaliated against Plaintiff's legal rights under the FMLA by wrongfully delaying and initially denying Plaintiff's application for FMLA; interfering with her doctor appointments after her FMLA was approved; decreasing her yearly bonus for going to doctor appointments; demoting her; and/or refusing to consider her for a new position for which she was qualified.

34. Plaintiff has suffered compensatory damages as the direct result of Defendant's discrimination and retaliation. Plaintiff would further show that the Defendant's conduct was done willfully and with malice and that she is entitled to liquidated and exemplary damages.

35. Defendant's conduct toward Plaintiff caused her severe emotional distress, pain and suffering and/or other nonpecuniary losses, for which Plaintiff seeks past and future compensatory damages.

## IV.
## DAMAGES

36. The amount of damages which Plaintiff seeks herein exceeds the jurisdictional minimum of this Court.

37. Plaintiff seeks statutory damages, back pay and/or lost wages and benefits in the

past and future, all actual monetary losses, interest on the unpaid amounts, an equal amount in liquidated damages, exemplary damages, attorney's fees, expert witness fees, costs, prejudgment and post judgment interest and such other and further legal and equitable relief to which Plaintiff is entitled pursuant to the FMLA.

38. Plaintiff is entitled to actual damages, including pecuniary damages, mental anguish or emotional pain and suffering, inconvenience, and loss of enjoyment of life in the past and in the future, and such other and further relief to which Plaintiff is entitled because of the actions and/or omissions complained of herein.

## V.
## JURY DEMAND

39. Plaintiff respectfully requests a jury trial.

## VI.
## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendant be cited to appear, and, that Plaintiff be awarded judgment against Defendant for statutory damages, compensatory, punitive and general damages, back pay and/or lost wages and benefits in the past and future, all actual monetary losses, interest on the unpaid amounts, an equal amount in liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and post judgment interest and such other and further legal and equitable relief to which Plaintiff is entitled.

Respectfully submitted,

**/s/ Marshay Iwu**
Marshay Iwu
Iwu & Associates

STATE BAR CARD NO. 24083204
P. O. BOX 851553
Mesquite, Texas 75185-1553
Telephone: (214) 417-2738
Facsimile: (214) 272-3186
marshayiwu@lawyersdemandingjustice.com

**ATTORNEY FOR PLAINTIFF**